## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Holly Jarvis,

                      Plaintiff,

        v.                           5:25-CV-1167
                                       (MAD/MJK)

Officer Knapp *et. al.*,

                      Defendant.

---

Holly Jarvis, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Judge:

## ORDER & REPORT- RECOMMENDATION

On August 26, 2025, Jarvis began this action by filing a Complaint and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk sent Jarvis' Complaint and *IFP* application to this Court for review. (Dkts. 1, 2).

## I.    BACKGROUND

On July 3, 2025, Officer Knapp approached Jarvis and asked her about an open beer can on the curb. (Complaint, Dkt. 1, pg. 1, ¶1). Jarvis denied ownership of the can. (*Id.*). Jarvis alleges that Knapp then demanded her name "without reasonable suspicion or probable cause." (*Id.* at ¶4). Knapp then declared that Jarvis was detained. (*Id.*

at ¶5). Around this time, Jarvis tried to leave but Knapp "pushed, shoved, and knocked" her "into a wall while" she was trying "to walk away." (*Id.* at ¶8). Finally, Knapp handcuffed Jarvis, and placed her in a patrol car. (*Id.* at ¶5).

Next, Knapp searched Jarvis' bag, took out her "legal papers relating to another civil rights case" and examined them. (*Id.*). Shortly after this, another officer, John Doe, arrived and joined in demanding Jarvis' name. (*Id.* at ¶6). Jarvis protested the detention. (*Id.*). The officers then issued Jarvis two Desk Appearance Tickets: the first for underage possession of alcohol and the second for "loitering, littering," and an "open container." (*Id.* at ¶7).

Jarvis claims that this incident occurred because "Syracuse Police Department failed to properly train, supervise, or discipline its officer." (*Id.* at ¶10) (cleaned up).

## II.    IFP APPLICATION

Jarvis declares in her *IFP* applications that she is unable to pay the filing fee. (Dkt. 2). And after reviewing her application, this Court finds that Jarvis is financially eligible for *IFP* status.

## III.  STANDARD OF REVIEW

On their own, courts can dismiss a case—at any time—if they determine that an action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (cleaned up); 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

Courts must show liberality toward *pro se* litigants and use extreme caution when *sua sponte* dismissing *pro se* complaints. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000). Still, courts have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.  DISCUSSION

### A. The District Court should dismiss Jarvis' illegal search claim because the Complaint implicitly alleges that Officer Knapp's seizure of Jarvis was reasonable.

The Court recommends dismissing Jarvis' illegal search claim

*without prejudice and with leave to amend*. To plausibly allege an illegal

search claim plaintiffs must show, among other things, that the seizure

was unreasonable. Here, Jarvis cannot do so. Thus, the District Court

should dismiss Jarvis' illegal search claim.

The Fourth Amendment prohibits illegal seizures. U.S. Const.

Amend. IV. "In order to determine whether an individual's Fourth

Amendment rights have been violated, the Court must engage in a two-

part analysis: (1) considering all of the circumstances of the case, was

there a 'seizure' within the meaning of the Fourth Amendment; and (2)

if there was a seizure, was such seizure reasonable." *Jie Yin v. NFTA*,

188 F. Supp. 3d 259, 270 (W.D.N.Y. 2016). As to the first prong: "an

individual is seized for purposes of the Fourth Amendment when the

officer, by means of physical force or show of authority, terminates or

restrains [the individual's] freedom of movement." *Jackson v. City of

New York*, 939 F. Supp. 2d 235, 246 (E.D.N.Y. 2013) (cleaned up). As to

the second prong: a seizure is reasonable "if the officer has a reasonable

suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Id.*

Jarvis plausibly alleges that she was seized. Jarvis clearly alleges that she "was handcuffed," and "placed in a patrol car." (Complaint, Dkt. 1, pg. 2, ¶5). Doubtless, a handcuffed citizen placed in the backseat of a patrol does not feel free to leave. As a result, Jarvis plausibly alleged that she was seized. *See United States v. Mendenhall,* 446 U.S. 544, 554 (1980). ("A person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.").

But Jarvis has not plausibly alleged that the seizure was unreasonable. Syracuse prevents persons from drink alcohol in public. *See* Syr. Admin. Code Art. 13.5. In fact, "possession of an open container containing an alcoholic beverage by any person" creates "a rebuttable presumption that such person" intended to violate the ordinance" *Id.* (cleaned up). Jarvis' Complaint alleges Officer Knapp saw an open container on the curb and he asked whether it was hers. (Complaint, Dkt. 1, pg. 2, at ¶3). The rational inference is that the officer saw the

beer can near Jarvis and believed that she intended to violate Syracure's open-container ordinance. Put another way, Officer Knapp had at least reasonable suspicion to believe Jarvis had committed an offense. *Compare United States v. Singletary*, 798 F.3d 55, 63 (2d Cir. 2015) (holding that the law enforcement officer had reasonable suspicion to conduct an investigatory stop where the suspect was "carrying a beer-sized can wrapped in a brown paper bag" while walking down the street) *with Barnes v. Carolan*, 819 F. App'x 51, 52–53 (2d Cir. 2020) (summary order) ("Probable cause exists for an open container violation based on the officer's observation that a suspect was holding a partially concealed bottle or can."). All that said, Jarvis has not plausibly alleged that the seizure was unreasonable.

To recap, Jarvis has plausibly alleged prong one—that she was seized—but she has not plausibly alleged prong two—that the seizure was unreasonable. And because that's so, the District Court should dismiss Jarvis' illegal seizure claim *without prejudice and with leave to amend.*

## B. The District Court should dismiss Jarvis' illegal search claim because Jarvis has not pleaded any injury.

The District Court should dismiss Jarvis' illegal search claim. The Fourth Amendment prohibits illegal searches. U.S. Const. Amend. IV. A Fourth Amendment search "occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information." *Jennings v. Decker*, 359 F. Supp. 3d 196, 207–08 (N.D.N.Y. 2019). "In narrow circumstances, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction as long as the suit would not necessarily imply that the plaintiff's conviction was unlawful." *Dayter v. Caputo*, No. 6:19-CV-0477 (TJM/TWD), 2019 WL 3037504, at *7 (N.D.N.Y. June 4, 2019) (cleaned up). Here, Jarvis' Complaint neither alleges that her legal documents were taken and used as evidence in her criminal case nor that the officers harmed her by opening and examining her papers. (Complaint, Dkt. 1, pg. 2, at ¶5). In other words, Jarvis has not plausibly pleaded an

illegal search claim. As a result, this Court recommends denying Jarvis'

illegal search claim *without prejudice and with leave to amend*.

### C. The District Court should dismiss Jarvis' excessive force claim because nothing in her Complaint establishes that Officer Knapp used unnecessary and unrestrained force.

The Court recommends dismissing Jarvis' excessive force claim

*without prejudice and with leave to amend*. To plausibly allege a Fourth

Amendment excessive force claim, plaintiffs show that the defendant

officer's use of force was objectively unreasonable under the

circumstances. Here, Jarvis only alleges that she was pushed and

shoved. Without more, there the Complaint does not plausibly plead an

excessive force claim. In consequence, the District Court should dismiss

Jarvis' excessive force claim.

"The Fourth Amendment prohibits the use of excessive force in

making an arrest." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir.

2015). To plausibly allege a Fourth Amendment excessive force claim,

plaintiffs must allege that the "police officer's use of force" was

"objectively unreasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or

motivation." *Kayo v. Mertz*, 531 F. Supp. 3d 774, 796 (S.D.N.Y. 2021)

(cleaned up). Courts examine several factors when analyzing excessive force claims. *Id.* These factors include: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used, the extent of injury inflicted, and" (3) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016). Courts also examine "(4) the nature and severity of the crime leading to the arrest, (5) whether the suspect posed an immediate threat to the safety of the officer or others, and (6) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Linton v. Zorn*, 135 F.4th 19, 31 (2d Cir. 2025) (cleaned up). Importantly, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (cleaned up).

Jarvis has not plausibly alleged an excessive force claim. In her Complaint, Jarvis notes that one of the officer Defendants "pushed, shoved, and knocked" her "into a wall while" she was trying "to walk away." (Complaint, Dkt. 1, pg. 2, at ¶8). But she does not identify how

much forced was used. Police officers have "the right to use some degree of physical coercion" when trying "to effectuate an arrest." *Mesa v. City of New York*, No. 09-CV-10464, 2013 WL 31002, at *18 (S.D.N.Y. Jan. 3, 2013). So *any* use of force does not rise to the level of excessive force. *See Kayo*, 531 F. Supp. 3d at 798. (granting summary judgment on the plaintiff's fourth amendment excessive force claim where the plaintiff argued that any use of force was unreasonable). Without more, Jarvis' Complaint is too threadbare to conclude that excessive force was plausibly alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, §1915 review would be meaningless for excessive force claims if plaintiffs need only plead that an officer pushed them. So this Court recommends dismissing Jarvis' excessive force *without prejudice and with leave to amend*.

**D. The District Court should dismiss Jarvis' First Amendment retaliation claim because the Complaint does not allege that her speech was protected, that the Defendants were motivated by Jarvis' speech, or that Defendant's actions chilled Jarvis' speech.**

The Court recommends dismissing Jarvis' First Amendment retaliation claim *without prejudice and with leave to amend*. To plausibly allege a First Amendment retaliation claim, plaintiffs must at

least show that their speech was protected, and the speech caused the government actor to retaliate. Here, Jarvis can show neither. So the District Court should dismiss Jarvis' First Amendment retaliation claim.

"The government may not retaliate against an individual for engaging in protected speech under the First Amendment." *Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 136 (N.D.N.Y. 2024) (Hurd J.). To plausibly allege a First Amendment retaliation claim, plaintiffs must allege that they: (1) have "an interested protected by the First Amendment; (2) the defendants actions were motivated or substantially caused by" the plaintiff's "exercise of that right; and (3) the defendants actions effectively chilled the exercise of the plaintiff's First Amendment rights." *Galarza v. Monti*, 327 F. Supp. 3d 594, 603 (S.D.N.Y. 2018). "The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive*." Caravalho v. City of New York*, 732 F. App'x. 18, 23 (2d Cir. 2018).

Jarvis has not plausibly pleaded any element of the retaliation claim. *First*, Jarvis does not identify what interest the First

Amendment protects. At best, Jarvis' Complaint alleges that Jarvis has a protected interest in not giving police officers her name. No such interest exists. *Cf. Caravalho*, 732 F. App'x. at 22 (citing New York's disorderly conduct statute approvingly where one element of the statute requires prosecutors to prove that the accused refused to comply with a lawful order).[1] *Second*, Jarvis "does not allege any causal connection between any of" her "protected First Amendment speech and the adverse actions taken by the Officers." *Thomas*, 711 F. Supp. 3d at 136. (denying plaintiff's First Amendment retaliation claim). The only rational reading of Jarvis' Complaint is that there was an open beer can near Jarvis and Officer Knapp requested her name so that he could issue Jarvis a Desk Appearance Ticket. *See* (Complaint, Dkt. 1, pg. 2, at ¶¶3, 4, 7). That could establish probable cause. *See Barnes*, 819 F. App'x at 53 (summary order) (Acknowledging that the officer defendants had a least probable cause to arrest the plaintiff for an open container violation.). But it cannot establish that Defendants actions were motivated by the exercise of speech. Beyond that, if probable cause

---

[1] Jarvis' counterargument—that the officers lacked reasonable suspicion and probable cause—is unpersuasive because it is a conclusory legal statement unsupported by any facts or analysis. *See* Complaint, Dkt. 1, pg. 2, at ¶3).

exists for Officer Knapp to believe that Jarvis violated Syracuse's open container ordinance, there is no retaliatory motive. *See Caravalho*, 732 F. App'x at 23 (summary order). *Third,* nothing in Jarvis' Complaint alleges that her speech was chilled. In sum, Jarvis has not plausibly alleged a First Amendment retaliation claim. So, the District Court should dismiss Jarvis' First Amendment retaliation claim *without prejudice and with leave to amend*.

### E. The District Court should dismiss Jarvis' municipal liability claim because she does not offer any policy or practice that caused the constitutional violations she purportedly suffered.

The Court recommends dismissing Jarvis' municipal liability claim *without prejudice and with leave to amend*. To plausibly allege municipal liability claims, plaintiffs must plead that the municipality had a policy or practice that caused the plaintiff's constitutional deprivation. Here, Jarvis does not plead anything of the sort. As a result, the District Court should dismiss Jarvis' Complaint as to this issue.

Under § 1983, a municipality is responsible only for its "own illegal acts" and cannot be held vicariously liable for the constitutional violations of its employees. *Connick v. Thompson*, 563 U.S. 51, 60

(2011). A municipality may be held liable only where an "official municipal policy" causes the constitutional deprivation. *Id.* (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)). "Official municipal policy" includes laws passed by legislators, acts of policymaking officials, and "practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

Plaintiffs may satisfy the policy or custom requirement in one of four ways: (1) "a formal policy officially endorsed by the municipality;" (2) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question;" (3) "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising [policymaker] must have been aware;" or (4) "a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010).

The District Court should dismiss Jarvis' *Monell* claim. Jarvis summarily alleges that the "Syracuse Police Department failed to properly train, supervise, or discipline its officers." (Complaint, Dkt. 1, pg. 4, ¶10) (cleaned up). Yet there is not a molecule of evidence alleged to support this claim. *See generally* (Complaint, Dkt. 1). Jarvis' conclusory statement is insufficient to plausibly allege a *Monell* claim. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy."). Beyond that, Jarvis' "claims against the [Syracuse] Police Department must be dismissed . . . because the Police Department is not an independent legal entity subject to suit." *Myers v. Wigdorski*, No. 23-CV-6317-DGL, 2023 WL 10147483, at *6 (W.D.N.Y. Aug. 9, 2023). That said, the Court recommends dismissing Jarvis' *Monell* claim *without prejudice and with leave to amend.*

**F. The District Court should allow Jarvis to amend her complaint.**

Generally, before courts dismiss a *pro se* complaint or any part of the complaint on its own, they should afford the plaintiff the opportunity to amend at least once; but leave to re-plead may be denied where any amendment would be futile. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with a plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, there is no futility because Jarvis can amend her Complaint to include facts that make out each claim. Thus, the Court recommends finding no futility.

## V. CONCLUSION

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that Jarvis' motion to proceed *IFP* (Dkt. 2) is **GRANTED;** and it is further

**RECOMMENDED,** that Jarvis' Fourth Amendment illegal seizure should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Jarvis' Fourth Amendment illegal search claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Jarvis' Fourth Amendment excessive force claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Jarvis' First Amendment retaliation claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that Jarvis' *Monell* claim should be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**; and it is further

**RECOMMENDED,** that the District Court **DISMISS** the Syracuse Police Department because it cannot be sued.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: October 15, 2025.

Digitally signed by
Mitchell J Katz
Date: 2025.10.15
11:09:18 -04'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

819 Fed.Appx. 51 (Mem)

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Edward BARNES, Plaintiff-Appellant,

v.

NYPD Police Officer Joseph CAROLAN, Tax #953730, NYPD
Police Officer Joseph Fratto, Tax #953882, Defendants-Appellees,
John Doe #1, a Police Officer from NYPD, John Doe #2, a Police Officer from NYPD,
John Doe #3, a Police Officer from NYPD, The City of New York, Defendants.

19-2489

|

September 3, 2020

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, *J.*; Pitman, *M.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be and it hereby is **AFFIRMED**.

**Attorneys and Law Firms**

Appearing for Appellant: EDWARD BARNES, pro se, New York, N.Y.

Appearing for Appellees: NWAMAKA EJEBE, Assistant Corporation Counsel (Melanie Tharamangalam West, on the brief), for James E. Johnson, Corporation Counsel for the City of New York, New York, N.Y.

Present: ROSEMARY S. POOLER, PETER W. HALL, DENNY CHIN, Circuit Judges.

**\*52  SUMMARY ORDER**

Appellant Edward Barnes, proceeding pro se, appeals the district court's decision granting summary judgment to defendants, officers Joseph Carolan and Joseph Fratto. Barnes sued the defendants under 42 U.S.C. § 1983, claiming that they violated his Fourth Amendment rights when they stopped and searched him, and arrested him. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

Summary judgment in favor of defendants was proper because the undisputed facts showed that the defendants had arguable probable cause to search and arrest Barnes. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 24 n.4 (2d Cir. 2018) ("[W]e may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." (alteration and internal quotation marks omitted)).

Probable cause exists for an open container violation based on the officer's observation that a suspect was holding a partially concealed bottle or can. *See, e.g., People v. Bothwell*, 261 A.D.2d 232, 234, 690 N.Y.S.2d 231 (1999) (holding that officer had probable cause to believe suspect violated open container law because the officer was trained "to police quality of life offenses [and] observed defendant, engaged in conversation, holding in front of him a partially concealed open bottle resembling a beer bottle"); *cf. United States v. Singletary*, 798 F.3d 55, 63 (2d Cir. 2015) (holding that officer had reasonable suspicion to conduct an investigatory stop where the suspect was "carrying a beer-sized **\*53** can wrapped in a brown paper bag" while walking down the street).

Because the defendants had at least arguable probable cause to arrest Barnes for an open container violation, the search was also lawful. A search incident to arrest is lawful where the officer reasonably believed he had probable cause, regardless of whether the officer actually intended to arrest the suspect (or simply issue a ticket or violation) prior to the search. *See United States v. Diaz*, 854 F.3d 197, 205–09 (2d Cir. 2017).

Finally, the defendants also had arguable probable cause to arrest Barnes for possession of the knife, despite Barnes's argument that the knife was a utility knife. Because the undisputed facts showed that the knife flicked open, the officers reasonably believed the knife to be a gravity knife. *See People v. Herbin*, 86 A.D.3d 446, 446, 927 N.Y.S.2d 54 (2011) (holding that the definition of a gravity knife was met where "officers release[d] the blade simply by flicking the knife with their wrists").

We have considered the remainder of Barnes's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

**All Citations**

819 Fed.Appx. 51 (Mem)

---

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    2



KeyCite Yellow Flag

Called into Doubt by   Parker v. Blackerby,   W.D.N.Y.,   March 26, 2019

732 Fed.Appx. 18

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Alexander CARAVALHO, Sergio Castillo, Daniel Greenspan,

Joseph Sharkey, Easton Smith, Jennifer Waller, Plaintiffs-Appellants,

Eric Carter, Austin Guest, Thomas Hintze, Plaintiffs,

v.

CITY OF NEW YORK, New York City Police Department, Officer Li, Ahmed, NYPD Officer Abdel-Rahim, Rodriguez, NYPD Officers John Does, 1-15, the names being fictitious, as the true names and shield numbers are not presently known, in their individual and official capacities, NYPD Officers Jane Does, 1-15, the names being fictitious, as the true names and shield numbers are not presently known, in their individual and official capacities, NYPD Department Chief Joseph Esposito, Nicole Papamichael, Department Inspector Edward Winski, Lieutenant Frank Viviano, Officer Grantley Bovell, Shield No. 11743, Officer Jabded Ahmed, Shield No. 19415, Officer Alexis Rodriguez, Shield No. 28722, Officer Cheung Li, Shield No. 5474, Officer Michael Galgano, Shield No. 2671, Defendants-Appellees.

17-1944-cv

|

April 25, 2018

**Synopsis**

**Background:** Protesters brought action against city and police officers, alleging under § 1983 that they were falsely arrested and unlawfully detained, and that defendants violated their First Amendment and due process rights. The United States District Court for the Southern District of New York, Castel, J., 2016 WL 1274575, granted in part and denied in part defendants' motion for summary judgment. The District Court, Castel, J., 2016 WL 4154273, denied protesters' motion for reconsideration. Protesters appealed.

**Holdings:** The Court of Appeals held that:

[1] officers had probable cause to arrest protestors for disorderly conduct, thus precluding false arrest and First Amendment retaliation claims;

[2] decision to temporarily close privately-owned public park for protestors' violation of park rules was permissible time, place, and manner restriction under First Amendment;

[3] detention of protesters for 24 to 30 hours was not excessive; and

[4] protesters could not maintain claim for denial of their fair trial rights.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment; Motion for Reconsideration.


West Headnotes (4)

**[1]**     **Civil Rights**  🔑  Arrest and detention

**Constitutional Law**  🔑  Protests and Demonstrations in General

**Search, Seizure, and Arrest**  🔑  Disorderly conduct and breach of the peace

Police officers had probable cause to arrest protestors, who had gathered in privately-owned public park, for disorderly conduct, under New York law, thus precluding their § 1983 false arrest and First Amendment retaliation claims; officers made several announcements ordering protestors to disperse, and officers observed protesters locking their arms and legs together, sitting on ground, and refusing to leave. U.S. Const. Amends. 1, 4; 42 U.S.C.A. § 1983; N.Y. Penal Law § 240.20(6).

19 Cases that cite this headnote


**[2]**     **Constitutional Law**  🔑  Protests and Demonstrations in General

**Municipal, County, and Local Government**  🔑  Prevention of improper use or obstruction

Police officers' decision to temporarily close privately-owned public park for protestors' violation of park rules was permissible time, place, and manner restriction under First Amendment; government had substantial interest in ensuring that its public spaces were safe and clean, and temporarily clearing park on day in question, as tents and tarps were being erected, with hundreds of protesters in attendance, was narrowly tailored means of achieving that interest, and protesters were free to exercise their First Amendment rights in other public fora in vicinity or return to park after it was cleaned. U.S. Const. Amend. 1.

3 Cases that cite this headnote


**[3]**     **Search, Seizure, and Arrest**  🔑  Particular cases

Police officers' detention of protesters for 24 to 30 hours was not excessive, as would support protesters' § 1983 excessive detention claim under Fourth Amendment; although protesters contended that there was no justification to detain them once they were separated from their arresting officers, they failed to demonstrate that their release was unreasonably delayed because of ill will, delay for delay's sake, or officers' attempts to gather additional evidence to justify their arrests, rather than because of practical realities of transporting busloads of arrestees and processing their arrests. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

3 Cases that cite this headnote


**[4]**     **Criminal Law**  🔑  Wrongful act or conduct of person injured

Protesters failed to demonstrate that they were detained as result of allegedly fabricated arrest paperwork by city police officers, rather than their arrest for disorderly conduct, thus precluding protesters' § 1983 claim for denial of their Sixth Amendment right to fair trial based on fabricated information. U.S. Const. Amend. 6; 42 U.S.C.A. § 1983.

13 Cases that cite this headnote

**\*20**  Appeal from the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED.**

**Attorneys and Law Firms**

FOR PLAINTIFFS-APPELLANTS: GIDEON O. OLIVER, New York, New York.

FOR DEFENDANTS-APPELLEES: JOHN MOORE, Assistant Corporation Counsel (Richard Dearing, Deborah A. Brenner, Assistant Corporation Counsels, on the brief ), for Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

PRESENT: RICHARD C. WESLEY, DENNY CHIN, Circuit Judges, JESSE M. FURMAN, Judge. *

**\*19  SUMMARY ORDER**

Plaintiffs-appellants, six individuals who were arrested on March 17, 2012 after refusing to disperse from an Occupy Wall Street protest in Zuccotti Park, appeal the district court's orders dismissing their 42 U.S.C. § 1983 claims in favor of defendants-appellees, employees of the New York City Police Department (the "NYPD") and the City of New York (the "City"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

The following facts are construed in the light most favorable to plaintiffs. Alexander Carvalho, Sergio Castillo, Daniel Greenspan, Joseph Sharkey, Easton Smith, and Jennifer Waller were among hundreds of protesters celebrating the six-month anniversary of the Occupy Wall Street movement in Zuccotti Park on March 17, 2012. Zuccotti Park is a privately owned public space which is governed by park rules established and enforced by its owner and operator, Brookfield Office Properties ("Brookfield"). On that day, two NYPD officials—Chief of Department Esposito and Deputy Inspector Winski—observed  **\*21** protesters setting up tents and tarps, lying down, and climbing on fences and shrubs. This behavior violated posted park rules, and a Brookfield representative announced that the park was being closed for cleaning and that people were required to leave in order that the park be cleaned. Plaintiffs ignored the instructions.

After the decision was made to clear the park, Winski and Lieutenant Viviano made several announcements with bullhorns ordering protesters to disperse, but not all plaintiffs heard the announcements. Plaintiffs did not leave and, except for Castillo, locked arms and legs with other protesters to form human walls. After further warnings, the police arrested those protesters who refused to leave, including plaintiffs, and transported them on buses to police precincts and later Central Booking. Because plaintiffs and other arrestees were separated from their arresting officers during transport, other officers were designated as arresting officers and completed the arrest processing paperwork. Plaintiffs were held in custody for 24 to 30 hours. They were released without charges because their designated arresting officers could not personally attest to their criminal conduct.

On June 17, 2013, plaintiffs sued the City and certain NYPD officers for violations of their First, Fourth, Sixth, and Fourteenth Amendment rights. The district court granted summary judgment in part for defendants pursuant to a March 31, 2016 memorandum and order, dismissing all plaintiffs' claims at issue in this appeal. The court denied plaintiffs' motion for reconsideration on July 29, 2016, and—following the settlement of remaining issues unrelated to this appeal—issued orders

closing the case on December 21, 2016 and again on March 21, 2017. [1] Plaintiffs appealed on June 16, 2017. On appeal, plaintiffs challenge the district court's dismissal of their false arrest, First Amendment, excessive detention, and fair trial rights claims. [2]

We review *de novo* the district court's summary judgment ruling, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in her favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). A movant is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the **\*22** movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a) ). Upon review, we conclude that the district court properly granted summary judgment to defendants on plaintiffs' claims.

## I. False Arrest

A claim for false arrest under Section 1983 and New York law requires a plaintiff to demonstrate that "the defendant intentionally confined him without his consent and without justification." *Dufort v. City of N.Y.*, 874 F.3d 338, 347 (2d Cir. 2017) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest...." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852). "Probable cause exists when 'the facts and circumstances within ... the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.' " *Kass v. City of N.Y.*, 864 F.3d 200, 206 (2d Cir. 2017) (quoting *Marcavage v. City of N.Y.*, 689 F.3d 98, 109 (2d Cir. 2012) ). To determine whether probable cause exists, "we look at the facts as the officers knew them in light of the specific elements" of the offense, *Gonzalez*, 728 F.3d at 155, considering the totality of the circumstances and "the perspective of a reasonable police officer in light of his training and experience," *United States v. Delossantos*, 536 F.3d 155, 159 (2d Cir. 2008).

The offense of disorderly conduct under N.Y. Penal Law § 240.20(6) consists of the following elements: "the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm." *Kass*, 864 F.3d at 211 (citing N.Y. Penal Law § 240.20(6) ). [3] Under the second element, refusal to obey an order is justified "only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order." *Id.* at 212 (quoting *People v. Todaro*, 26 N.Y.2d 325, 328-29, 310 N.Y.S.2d 303, 258 N.E.2d 711 (1970) ).

 [1]   On this record, a reasonable jury could only conclude that the NYPD officers had probable cause to arrest plaintiffs for disorderly conduct under N.Y. Penal Law § 240.20(6). Plaintiffs do not contest that officers made several announcements ordering protesters to disperse, and that officers observed protesters locking their arms and legs together, sitting on the ground, and refusing to leave. Although some plaintiffs did not hear the officers' orders to disperse, in assessing probable cause "we look at the facts as the officers knew them," *Gonzalez*, 728 F.3d at 155, and it was objectively reasonable for the officers—who gave multiple dispersal orders and warned protestors before arresting them—to conclude that plaintiffs refused to comply with a lawful order to disperse in violation of N.Y. Penal Law § 240.20(6). And while plaintiffs contend that the orders to disperse were not lawful, on these facts no reasonable jury could conclude that the orders were "purely arbitrary." *Kass*, 864 F.3d at 212 (quoting **\*23** *Todaro*, 26 N.Y.2d at 329, 310 N.Y.S.2d 303, 258 N.E.2d 711).

## II. First Amendment

### A. Retaliation

The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive. *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012). Because we conclude that plaintiffs' arrests were supported by probable cause, their First Amendment retaliation claims are without merit.

**B. Decision to Temporarily Clear Zuccotti Park**

In public fora, "the government may apply content-neutral time, place, and manner restrictions only if they are 'narrowly tailored to serve a significant government interest' and if 'ample alternative channels of communication' are available." *Kass*, 864 F.3d at 208 (quoting *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010) (per curiam)). A restriction is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation" and it is "not substantially broader than necessary to achieve the government's interest." *Marcavage*, 689 F.3d at 106 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799-800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) ). But a narrowly tailored restriction need not be the "least restrictive or least intrusive means" of serving the government's interest, *id.* (quoting *Ward*, 491 U.S. at 798, 109 S.Ct. 2746), and the "requirement that 'ample alternative channels' exist does not imply that alternative channels must be perfect substitutes for those channels denied to plaintiffs" by the restriction, *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 101 (2d Cir. 2006).

 **[2]**    Assuming, without deciding, that the First Amendment applies to Zuccotti Park, we conclude as a matter of law that defendants' decision to temporarily close Zuccotti Park for park rules violations was a constitutional time, place, and manner restriction. The government has a substantial interest in ensuring that its public spaces are safe and clean, *see Marcavage*, 689 F.3d at 104, and temporarily clearing the park on the day in question—as tents and traps were being erected, with hundreds of protesters in attendance—was a narrowly tailored means of achieving that interest. [4]  Although the officers could conceivably have closed portions of the park instead, the First Amendment does not require the "least restrictive or least intrusive means." *Id.* at 106 (quoting *Ward*, 491 U.S. at 798, 109 S.Ct. 2746). Moreover, plaintiffs remained free to exercise their First Amendment rights in other public fora in the vicinity or to return to Zuccotti Park after it was cleaned.

## III. Excessive Detention

A claim for excessive detention is governed by the Fourth Amendment, which "requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention" following a warrantless arrest. *Bryant v. City of N.Y.*, 404 F.3d 128, 136 (2d Cir. 2005). Under the Supreme Court's precedent, "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement...." *Id.* at 137 (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) ). An arrestee can rebut the presumption of constitutionality by showing that the probable  **\*24**  cause determination was "delayed unreasonably," such as "for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56, 111 S.Ct. 1661.

 **[3]**    We conclude that no reasonable jury could find that the detention of plaintiffs for 24 to 30 hours, in the circumstances here, was excessive. Their detention of less than 48 hours was presumptively reasonable. *See Bryant*, 404 F.3d at 137. Although plaintiffs contend that there was no justification to detain them once they were separated from their arresting officers, plaintiffs have not put forth any evidence to show that their release was unreasonably delayed because of "ill will," "delay for delay's sake," or officers' attempts to gather additional evidence to justify their arrests, rather than because of the "practical realities" of transporting busloads of arrestees and processing their arrests. *McLaughlin*, 500 U.S. at 56-57, 111 S.Ct. 1661. Nor are we persuaded by plaintiffs' reliance on New York law, because "the Fourth Amendment does not incorporate state procedural criminal law." *United States v. Bernacet*, 724 F.3d 269, 277 (2d Cir. 2013) (emphasis omitted).

## IV. Fair Trial Rights

To prevail on a claim for denial of the constitutional right to a fair trial based on fabricated information, a plaintiff must demonstrate that "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

 **[4]**  Assuming, without deciding, that a plaintiff who was never charged with an offense can state a claim for the denial of his or her constitutional right to a fair trial, we reject plaintiffs' claims on the merits. Plaintiffs failed to adduce any evidence demonstrating that they were detained as a result of the allegedly fabricated arrest paperwork, rather than their arrest for disorderly conduct. *See Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017) (plaintiff cannot state a claim for a liberty deprivation attributable to an arrest supported by probable cause, unless "the fabricated evidence causes some 'further deprivation' " (quoting *Garnett*, 838 F.3d at 277) ).

We have considered plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court.

### All Citations

732 Fed.Appx. 18

---

### Footnotes

\*   Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

1   After the only surviving claims, those of plaintiff Austin Guest, were settled, the district court entered the two orders —on December 21, 2016 and on March 21, 2017. Both apparently resolved only Guest's claims and purported to close the case. The March 21, 2017 order was entered because Guest and defendants had not in fact finalized the settlement after the December 21, 2016 order.

When it closed the case, however, the district court did not enter a separate judgment implementing its summary judgment decision, as required by Federal Rule of Civil Procedure 58(a). *See* Fed. R. Civ. P. 58(a) ("[e]very judgment and amended judgment must be set out in a separate document," subject to certain exceptions inapplicable in this case). But plaintiffs could not have appealed in any event until all the claims, including Guest's, were resolved. *See* Fed. R. Civ. P. 54(b). Therefore, we deem plaintiffs' time to appeal to run from 30 days after the district court's March 21, 2017 order was deemed "entered," which was 150 days after entry in the civil docket on March 21, 2017. *See* Fed. R. App. P. 4(a)(7)(A) (ii) (for purposes of Rule 4(a), a judgment or order is "entered" when "the judgment or order is set forth on a separate document, or 150 days have run from entry of the judgment or order in the civil docket," whichever comes first). The June 16, 2017 notice of appeal was filed within 180 days of the March 21, 2017 order. Hence, the appeal is timely.

2   Plaintiffs do not challenge the district court's dismissal of their excessive force, equal protection, due process, state law, and municipal liability claims.

3   The relevant text of the statute reads: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: ... He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse...." N.Y. Penal Law § 240.20(6).

4   Zuccotti Park encompasses about one rectangular block of open space, bounded by Broadway, Cedar Street, Church Street, and Liberty Street.

---

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.                                    6

Dayter v. Caputo, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-01167-MAD-MJK   Document 8   Filed 10/15/25   Page 27 of 42

2019 WL 3037504
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicholas DAYTER, Plaintiff,

v.

David CAPUTO, et al., Defendants.

6:19-cv-0477 (TJM/TWD)
|
Signed 06/03/2019
|
Filed 06/04/2019

**Attorneys and Law Firms**

NICHOLAS DAYTER, Plaintiff, pro se, 18-A-3400, Collins Correctional Facility, P.O. Box 340, Collins, NY 13440.

## ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent to the Court for review a complaint filed by *pro se* Plaintiff Nicholas Dayter asserting claims under 42 U.S.C. § 1983 arising out of his December 4, 2017, arrest and subsequent prosecution. (Dkt. No. 1.) Plaintiff, who is presently confined at Collins Correctional Facility, has not paid the required filing fee and seeks leave to proceed *in forma pauperis* ("IFP Application"). (Dkt. Nos. 2, 4.) Named as Defendants are David Caputo, Police Officer; Craig Sleurs, Police Officer; J.E. Cross, Detective; the Bethlehem Police Department; and Judge Ryan Donovan, Criminal Court Judge, Bethlehem City Court. (Dkt. No. 1.)

## I. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application (Dkt. No. 2), the Court finds Plaintiff has demonstrated sufficient economic need to proceed *in forma pauperis*. Plaintiff has also filed the inmate authorization form required in this District. (Dkt. No. 3.) Therefore, Plaintiff's IFP Application is granted. [1] (Dkt. No. 2.)

## II. LEGAL STANDARDS FOR INITIAL REVIEW

Having found Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because he seeks relief from a governmental entity or an officer or employee of a governmental entity, the sufficiency of the allegations set forth in his complaint must be considered in light of 28 U.S.C. §§ 1915(e) and 1915A.

Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

Similarly, § 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief can be granted; or ... seeks monetary relief against a person who is immune from such relief." 28 U.S.C. § 1915A(b).

**\*2** In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.*

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Additionally, when reviewing a complaint, courts are guided by the pleading requirements of the Federal Rules of Civil Procedure. Under Rule 8, a pleading shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (emphasis and citation omitted). Under Rule 10, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The purpose of this rule is to facilitate a cogent framing of the issues presented and permit defendants to properly respond to the allegations of a complaint. *Laspisa v. Citifinancial Does 1 to 20*, 269 F. Supp. 3d 11, 13 (N.D.N.Y. 2017); *Dabney v. Sawyer*, No. 11-CV-0273 (LEK/RFT), 2012 WL 3241571, at \*1 (N.D.N.Y. July 17, 2012). [2]

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Dayter v. Caputo, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 29 of 42

## III. COMPLAINT

**\*3**  On December 4, 2017, at approximately 8:00 a.m., Police Officers Caputo and Sleurs responded to Plaintiff's 911 call "that [he] was a victim of" and, when they arrived, placed him under arrest and took photographs. (Dkt. No. 1 at 4. [3] ) Plaintiff claims he was brought to the police station where he was assaulted, falsely arrested, and detained. *Id.* Caputo and Sleurs "punched and kicked" Plaintiff "all over" his body and "beat" him up for fifteen minutes straight. *Id.* As a result, Plaintiff suffered from bruising and swelling. *Id.*

Plaintiff claims Detective Cross "tampered with evidence and got rid of evidence and did a[n] illegal search and seizure of [his] property." *Id.* Cross also "planted fake evidence to prosecute [Plaintiff], which [he is] now serving a 2 to 4 years in prison." *Id.* [4] Plaintiff claims Judge Donovan "falsely detained [him] with bogus charges, and convicted and falsely charged and confined me, while officer Caputo and officer Sleurs violates several of [his] rights." *Id.* Plaintiff avers he can prove "it all" with "evidence" in his "discovery". *Id.*

Based on the foregoing, Plaintiff asserts claims against Defendants Caputo and Sleurs for excessive force, assault, failure to protect, violation of due process, false arrest, false imprisonment, slander, and defamation of character. *Id.* at 6. Plaintiff brings claims against Defendant Cross for tampering with evidence, illegal search and seizure, false arrest, false imprisonment, slander, defamation of character, and filing a false report. *Id.* Plaintiff asserts claims against Judge Donovan for false imprisonment, slander, and defamation of character. *Id.* Plaintiff seeks unspecified monetary damages. *Id.* For a complete statement, reference is made to the complaint. [5]

## IV. ANALYSIS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

### A. Claims Against Defendant Judge Donovan

**\*4**  It is well-settled judges are absolutely immune from suit for damages for judicial acts performed in their judicial capacities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute immunity protects judges for their judicial acts, even when such acts "are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation[.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). This is true however erroneous an act may have been and however injurious its consequences were to the plaintiff. *Id.*

Here, Plaintiff claims Judge Donovan [6] "falsely detained" him on "bogus charges, and convicted and falsely charged and confined me." *Id.* Plaintiff's allegations against Judge Donovan clearly relate to actions that are judicial in nature and, therefore, he is entitled to judicial immunity. Consequently, the Court recommends that all claims against Judge Donovan be dismissed with prejudice.

Dayter v. Caputo, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 30 of 42

**B. Claims Against Defendant Bethlehem Police Department**

It is unclear from the complaint what, if any, claims are alleged against the Bethlehem Police Department. Plaintiff identifies the Bethlehem Police Department as a Defendant in the caption of his complaint, yet makes no factual allegations against this Defendant in the body of the complaint. [7] (Dkt. No. 1 at 1.) However, "[a] police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Jackson v. Cty. of Nassau*, 07-CV-245, 2010 WL 335581, at *5 (E.D.N.Y. Jan. 22, 2010) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see, e.g., La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant.").

Therefore, the Court recommends dismissing all claims against the Bethlehem Police Department with prejudice. However, in deference to Plaintiff's *pro se* status, the Court recommends that Plaintiff be provided with an opportunity to amend his complaint to clarify claims, if any, he intended to allege against the Town of Bethlehem. [8]

**C. Claims Against Defendants Caputo and Sleurs**

**\*5**  While Plaintiff's complaint is not a model of clarity, construed liberally, Plaintiff asserts claims against Defendants Caputo and Sleurs for excessive force, failure to protect, assault, violation of due process, false arrest, false imprisonment, slander, and defamation of character. *Id.* at 6.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. at 486-87 (emphasis in original); *see also Peterson v. Todd*, No. 5:12-CV-1371 (MAD/DEP), 2013 WL 2487253, at *4 (N.D.N.Y. June 7, 2013) ("A claim for damages relating to a conviction that has not been so invalidated is not cognizable under Section 1983.") (citation and quotation marks omitted).

Thus, under *Heck* and its progeny, a "§ 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief) ... *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original). If a plaintiff whose success would necessarily demonstrate the invalidity of the confinement or its duration does not satisfy *Heck's* "favorable termination rule," he must seek relief through the federal habeas corpus statute rather than through § 1983. *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) ("[T]he purpose of the *Heck* favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally

Dayter v. Caputo, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 31 of 42

a judicial or administrative decision that affected the overall length of confinement, and that punishments related to their term of imprisonment, or the procedures that led to them ... must be attacked through a habeas petition.").

*Heck*, however, does not require dismissal of any claim whose adjudication in favor of the plaintiff would not necessarily invalidate his conviction or sentence. *See Jackson v. Suffolk Cty. Homicide Bureau*, 135 F.3d 254, 256-57 (2d Cir. 1998) (reversing dismissal of excessive force claim pursuant to *Heck* because a finding that excessive force had in fact been used would not necessarily require the invalidation of the conviction); *see, e.g., Delaney v. City of Albany*, No. 1:18-CV-1193 (DNH/CFH), 2019 WL 1486836, at *4 (N.D.N.Y. Apr. 4, 2019) (finding the plaintiff's assertion that he was subjected to excessive force during the arrest was not barred by *Heck* as it "would not implicate his judgments of conviction"); *report recommendation adopted by* 2019 WL 1922286 (N.D.N.Y. Apr. 30, 2019).

### 1. False Arrest, False Imprisonment, Defamation, Slander, and Violation of Due Process

Here, as currently pled, Plaintiff's claims against Defendants Caputo and Sleurs sounding in false arrest, false imprisonment, defamation, slander, and violation of due process strike at the heart of the apparent conviction Plaintiff received as a result of the events in question. Were Plaintiff to succeed on any of theory espoused above, he would necessarily call into question the validity of his underlying conviction and sentence. As such, all of these claims are barred because he has failed to show that a conviction or sentence has been overturned. *See Duamutef v. Morris*, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned); *Rivera v. City of Yonkers*, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007) (dismissing plaintiff's false arrest, false imprisonment, and malicious prosecution claims as barred under *Heck*); *Delaney v. City of Albany*, 2019 WL 1486836, at *4 (dismissing the plaintiff's false imprisonment, false arrest, and defamation claims without prejudice as barred by *Heck*); *Dorsey v. Regan*, No. 6:14-CV-23 (TJM/CFH), 2014 WL 1338415, at *1 (N.D.N.Y. Apr. 2, 2014) (dismissing claims for false arrest and false imprisonment without prejudice as barred by *Heck*); *Lane v. Papadimitrious*, No. 6:10-CV-647 (NAM/ATB), 2010 WL 2803468, at *1 (N.D.N.Y. July 14, 2010) (finding plaintiff's "claims in the nature of perjury, slander, evidence tampering, conspiracy to bring unfounded criminal charges against him, and false imprisonment necessarily implicate the validity of his conviction and thus are barred under *Heck* until such time as the conviction may be vacated or otherwise invalidated.").

**\*6** Accordingly, the Court recommends that Plaintiff's claims against Defendants Caputo and Sleurs for false arrest, false imprisonment, defamation, slander, and violation of due process be dismissed without prejudice as barred by *Heck*.

### 2. Excessive Force and Failure to Protect

"[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). The standard governing excessive force is "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted). "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012).

Additionally, liability under § 1983 may attach to a police officer for failing to intervene in or prevent an instance of excessive force if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean–Laurent v. Wilkinson*, 540 F.Supp.2d 501, 512 (S.D.N.Y. 2008) (citations omitted); see also *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.").

**Dayter v. Caputo, Not Reported in Fed. Supp. (2019)**

Case 5:25-cv-01167-MAD-MJK   Document 8   Filed 10/15/25   Page 32 of 42

Here, Plaintiff claims he was brought to the police station where Defendants Caputo and Sleurs "punched and kicked" him "all over" his body and "beat" him up for fifteen minutes straight. *Id.* As a result, Plaintiff suffered from bruising and swelling. *Id.* Thus, at this early stage in the litigation, Plaintiff has adequately "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

Therefore, the Court recommends that Plaintiff's excessive force and failure to protect claims against Defendants Caputo and Sleurs be found to survive initial review and require a response. In so recommending, no opinion is expressed as to whether these claims can withstand a properly filed dispositive motion judgment.

### 3. Assault

Plaintiff claims Defendants Caputo and Sleurs assaulted him. (Dkt. No. 1 at 6.) To the extent that Plaintiff asserts this claim under 42 U.S.C. § 1983, it is duplicative of his excessive force claim and must be dismissed for failure to state a claim upon which relief may be granted. *See Raymond v. Bunch*, 136 F. Supp. 2d 71, 81 (N.D.N.Y. 2001). To the extent this claim is asserted under New York law, claims for intentional torts are governed by a one-year statute of limitations. N.Y. C.P.L.R. § 215(3); *see also Ashjari v. Nynex Corp.*, 182 F.3d 898 (2d Cir. 1999) ("Under N.Y. C.P.L.R. § 215(3), claims of assault and battery ... must be brought within one year from the date the claim accrued."). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint). However, a district court typically should not dismiss a claim as time-barred without providing a *pro se* plaintiff with "notice and opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).

**\*7** Therefore, the Court recommends dismissing Plaintiff's assault claims against Defendants Caputo and Sleurs with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).

### D. Claims Against Defendant Cross

Construed liberally, Plaintiff asserts claims against Defendant Cross for false arrest, false imprisonment, illegal search and seizure, malicious prosecution, slander, and defamation. (Dkt. No. 1 at 4, 6.) *Id.*

### 1. False Arrest, False Imprisonment, Malicious Prosecution, Slander, Defamation, Violation of Due Process

For the same reasons discussed above, the Court finds Plaintiff's claims against Defendant Cross for false arrest, false imprisonment, malicious prosecution, slander, and defamation are barred by *Heck*. *See Morris*, 956 F. Supp. at 1115-18 (dismissing § 1983 claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights conspiracy under *Heck* where the plaintiff's underlying conviction had not been overturned). Consequently, the Court recommends that Plaintiff's claims against Defendant Cross for false arrest, false imprisonment, malicious prosecution, slander, and defamation be dismissed without prejudice as barred by *Heck*.

### 2. Illegal Search and Seizure

"A 'search' in the context of the Fourth Amendment occurs when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information."

Dayter v. Caputo, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 33 of 42

*Jennings v. Decker*, 359 F. Supp. 3d 196, 207-08 (N.D.N.Y. 2019) (citations omitted). "In narrow circumstances, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction" as long as the suit "would not necessarily imply that the plaintiff's conviction was unlawful." *Corely v. Vance*, No. 15 Civ. 1800 (KPF), 2015 WL 4164377, at *4 (S.D.N.Y. June 22, 2015) (citing *Heck*, 512 U.S. at 487 n. 7).

To determine if a § 1983 claim alleging an unlawful search would necessarily imply the invalidity of his conviction, the Court must "ascertain whether plaintiff could have been convicted even if the ... evidence [from the allegedly illegal search were] suppressed[.]" *Id.* (citations omitted). Because Plaintiff's allegation that Defendant Cross conducted an "illegal search and seizure" is conclusory and unsupported by any factual enhancement, the Court finds this claim fails to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). Additionally, as currently pled, the Court is unable to discern whether *Heck* also bars this claim.

Therefore, the Court recommends that Plaintiff's illegal search and seizure claim against Defendant Cross be dismissed without prejudice and with leave to amend pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; [9] and it is further

*\*8 **RECOMMENDED** that the Clerk be directed to provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3), and notify that official that Plaintiff has filed this action and is required to pay to the Northern District of New York the entire statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Judge Donovan be **dismissed with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(iii) and 1915A(b)(2); and it is further

**RECOMMENDED** that Plaintiff's claims against Defendant Bethlehem Police Department **be dismissed with prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff be provided with an opportunity to amend his complaint to clarify claims, if any, he intended to allege against the Town of Bethlehem; and it is further

**RECOMMENDED** that Plaintiff's excessive force and failure to protect claims against Defendants Caputo and Sleurs **survive initial review and require a response**; and it is further

**RECOMMENDED** that Plaintiff's assault claims against Defendants Caputo and Sleurs be **dismissed without prejudice and with leave to amend** pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff's illegal search and seizure claim against Defendant Cross be **dismissed without prejudice and with leave to amend** pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1); and it is further

**RECOMMENDED** that Plaintiff's remaining claims for false arrest, false imprisonment, malicious prosecution, defamation, slander, and violation of due process be **dismissed without prejudice** as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further

**RECOMMENDED** that in the event the District Court allows Plaintiff to file an amended complaint, he be instructed that any amended complaint be a complete pleading that supersedes his original complaint in all respects (and does not incorporate

**Dayter v. Caputo, Not Reported in Fed. Supp. (2019)**

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 34 of 42

by reference any portion of his original complaint); and that he not attempt to reassert any claim that has been dismissed with prejudice and/or without leave to amend by the District Court. The Court further recommends that Plaintiff be directed to comply in all respects with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure, which require, *inter alia*, that the amended complaint contain a short and plain statement of each claim showing that Plaintiff is entitled to relief, and that he state his claims in numbered paragraphs, each limited as far as practical to a single set of circumstances; and it is hereby

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 87 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 3037504

---

## Footnotes

1   The total cost for filing a civil action in this Court is $400.00, consisting of the civil filing fee of $350.00, 28 U.S.C. § 1914(a), and an administrative fee of $50.00. Although an inmate who is granted *in forma pauperis* status is not required to pay the $50.00 administrative fee, he is required to pay, over time, the full amount of the $350.00 filing fee regardless of the outcome of the action. 28 U.S.C. § 1915(b)(3).

2   The Court will provide Plaintiff with copies of unpublished decisions in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76, 76 (2d Cir. 2009) (per curium).

3   Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

4   According to the publicly available website maintained by the New York State Department of Corrections and Community Supervision, Plaintiff was received into custody on September 6, 2018, and he is serving an indeterminate sentence of two to four years for criminal contempt in the first degree, a Class E felony. *See* http://nysdoccslookup.docs.ny.gov (DIN 18A3400) (last visited June 3, 2019).

5   Plaintiff further claims that while he was a pretrial detainee at Albany County Correctional Facility based on the "bogus" charges, Assistant District Attorney Ariel R. Fallon contacted the facility and "ordered" a sergeant and two officers to assault Plaintiff. (Dkt. No. 1 at 5.) The Court takes judicial notice that these allegations are part of separate lawsuit filed in this District on March 5, 2019, entitled *Nicholas Dayter v. Ariel Fallo, et al.*, No. 9:19-cv-0301 (LEK/ATB).

6   The Court takes judicial notice that the Honorable Ryan T. Donovan, Town Justice, has presided over the criminal, small claims, and traffic matters in the Town of Bethlehem since 2006. *See* https://www.townofbethlehem.org/744/TownJustice-RyanDonovan (last visited June 3, 2019).

Dayter v. Caputo, Not Reported in Fed. Supp. (2019)

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 35 of 42

7    *See also Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 251 (S.D.N.Y. 2009) ("When a complaint names defendants in the caption but makes no substantive allegations against them in the body of the pleading, the complaint does not state a claim against these defendants.").

8    The Second Circuit has directed district courts to grant leave to *pro se* litigants to amend their complaints to name the municipality in which a police department sits as the real party in interest when a case is dismissed against a police department on the grounds that it is not an entity capable of being sued. *See Morris v. New York City Police Dep't*, 59 F. App'x 421, 422-23 (2d Cir. 2003) (summary order) (directing the district court to permit amendment of the complaint to name the City of New York as a defendant when the suit was dismissed against the New York City Police Department on the grounds it was not a suable entity).

9    Plaintiff is advised that although the application to proceed *in forma pauperis* has been granted, he will still be required to pay any fees he incurs in this action, including copying fees and witness fees.

10   If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Myers v. Wigdorski, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 36 of 42

2023 WL 10147483

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

Nathaniel MYERS, Plaintiff,

v.

Det. Adam WIGDORSKI, Det. Christopher Gerace, Det. Paul Fitzpatric, P.O. Joseph Christopher,

City of Buffalo Police Department, William Folckemer, and State of New York, Defendants.

23-CV-6317-DGL

|

Signed August 9, 2023

**Attorneys and Law Firms**

Nathaniel Myers, Elmira, NY, Pro Se.

David M. Lee, Corporation Counsel the City of Buffalo, Buffalo, NY, for Defendants Det. Adam Wigdorski, P.O. Joseph Christopher, William Folckemer, Christopher Schafer.

ORDER

DAVID G. LARIMER, UNITED STATES DISTRICT JUDGE

 **\*1** *Pro se* Plaintiff Nathaniel Myers ("Plaintiff"), was a pretrial detainee confined at the Erie County Correctional Facility, when he filed this action seeking relief under 42 U.S.C. § 1983. Docket Item 1. His Complaint alleges that the Defendants illegally searched and arrested him, and violated his due process and equal protection rights. Docket Item 1. He is seeking monetary damages. *Id.* at 5. Plaintiff also moved to proceed *in forma pauperis.* Docket Item 2.

For the reasons that follow, Plaintiff's Motion to proceed as a poor person is granted. Some of Plaintiff's claims are dismissed without leave to amend, and others are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless he files an amended complaint.

**DISCUSSION**

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed the required authorization, Docket Item 2, he is granted permission to proceed *in forma pauperis.* Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court must screen the Complaint.

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639

(internal quotation marks omitted). But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## I. THE COMPLAINT

In evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

**\*2**  Plaintiff alleges that on February 14, 2021, Defendant William Folckemer ("Folckemer") approached his parked vehicle on the driver's side and began talking with Plaintiff, who was the driver. [1] Docket Item 1 at 14. Folckemer issued Plaintiff three traffic tickets, for falsifying a temporary registration, unregistered motor vehicle, and unlicensed operator. *Id.* at 15. Plaintiff was ordered to exit the vehicle and handcuffed. *Id.* He was detained in the back of a patrol car while Folckemer searched his vehicle without a warrant. *Id.* Folckemer did not find any contraband but took Plaintiff into custody. *Id.*

During a pat search at police headquarters, Defendants Christopher and Folckemer found crack cocaine in Plaintiff's sock. *Id.* They removed the cocaine and detectives interviewed Plaintiff for several hours. *Id.* Following the interview, Plaintiff was taken to Central Booking for processing. *Id.* During his criminal proceedings Plaintiff moved to suppress evidence, arguing that his seizure was unlawful. *Id.* at 14. The Erie County Supreme Court granted the motion, reasoning that "searching the vehicle without a warrant, seizing the defendant without a warrant, and taking the defendant into custody for questioning on a wholly unrelated series of allegations were unlawful and well beyond the permissible scope of the initial approach" of the vehicle. *Id.* at 17.

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). "[T]here is no special rule for supervisory liability. Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

### A. Fourth Amendment: Illegal Search

Plaintiff asserts that the search of his car and his person violated the Fourth Amendment. Docket Item 1 at 5.

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 38 of 42

Myers v. Wigdorski, Not Reported in Fed. Supp. (2023)

**\*3** This claim appears to be barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994). "Subsequently, the Supreme Court and the Second Circuit 'extended *Heck*'s reach to section 1983 lawsuits brought during pending criminal prosecutions.' " *Dawson v. Lippiccolo*, 590 F. Supp. 3d 514, 517 (E.D.N.Y. 2022) (finding plaintiff's challenge to his ongoing criminal prosecution based on his claim of an "illegal search" to be barred by *Heck*) (quoting *Smalls v. Collins*, 10 F.4th 117, 137 (2d Cir. 2021)).

Thus, any illegal search and seizure claims that would render invalid Plaintiff's state court criminal prosecution, conviction, and/or confinement would be barred by *Heck*. *See Purnell v. Scarglato*, 409 F. Supp. 3d 54, 57 (E.D.N.Y. 2019) (holding that *Heck* barred plaintiff's illegal search claims, because the "claims directly implicate his conviction in state court" and there was "no evidence that his conviction was reversed, declared invalid or called into question by a federal court."). [2]

Here, the Complaint contains no facts regarding Plaintiff's criminal proceedings and whether they have been terminated in his favor. Therefore, Plaintiff is granted leave to amend his Complaint to demonstrate why his illegal search claims are not barred by *Heck*.

Moreover, even if Plaintiff's claim is not barred by *Heck*, "[v]ictims of unreasonable searches and seizures ... cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution." *Townes v. City of New York*, 176 F.3d 138, 141, 148 (2d Cir. 1999) (noting that injuries arising from a subsequent arrest, conviction, and incarceration "are not fairly traceable to the actual violations" of the plaintiff's Fourth Amendment rights); *see also Heck*, 512 U.S. at 487 n.7 (a "§ 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)" (citation omitted)). In a § 1983 action, unconstitutional police conduct that does not cause significant harm entitles the plaintiff to only a small or nominal award of damages. *Id.* at 146. "Thus, plaintiffs must allege damages attributable to the claims for unreasonable search and seizure to recover under Section 1983." *Matthews v. City of New York*, 889 F. Supp. 2d 418, 431 (E.D.N.Y. 2012).

**\*4** Here, Plaintiff seeks compensatory damages for lost wages, emotional distress, and loss of liberty, as well as punitive damages. See Docket Item 1 at 5. However, he does not allege that the search caused him lost wages and emotional distress, or whether he is seeking damages for the consequent criminal detention and prosecution. In the absence of any allegations regarding damages related to the search itself, the Complaint fails to state a sufficient Fourth Amendment claim.

Plaintiff is granted leave to amend his Complaint to demonstrate why his illegal search claims are not barred by *Heck*, and to allege damages related to the illegal search, to the extent that any such damages exist.

**B. Fourth Amendment: False Arrest**

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 39 of 42

Myers v. Wigdorski, Not Reported in Fed. Supp. (2023)

Plaintiff asserts that Defendants arrested him in violation of his Fourth Amendment rights. "The tort of false arrest supports a claim ... under section 1983 because it violates the Fourth Amendment." *Cook v. Sheldon*, 41 F.3d 73, 77 (2d Cir. 1994) (citing *Posr v. Doherty*, 944 F.2d 91, 97-98 (2d Cir. 1991)). "In analyzing § 1983 claims for unconstitutional arrest, [courts] generally look[ ] to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d at 845, 852 (2d Cir. 1996) (citation omitted). To successfully state a claim for false arrest in New York, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (brackets omitted) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003)).

"Probable cause is a complete defense to an action alleging false arrest or false imprisonment whether brought under State law or 42 USC § 1983." *Carlton v. Nassau Cnty. Police Dep't*, 306 A.D.2d 365, 366, 761 N.Y.S.2d 98 (N.Y. App. Div. 2003) (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975); *Zwecker v. Clinch*, 279 A.D.2d 572, 573, 720 N.Y.S.2d 150 (N.Y. App. Div. 2001); and *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979)). It is incumbent upon Plaintiff to plead and demonstrate the lack of probable cause. *See, e.g., Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

Plaintiff submitted the decision of the Erie County Supreme Court which acknowledged that "there was probable cause to arrest the driver based on his failure to produce a valid license." Docket Item 1 at 16. That court also concluded that the Defendants lacked probable cause to take Plaintiff "into custody for questioning on a wholly unrelated series of allegations." *Id.*

However, Plaintiff's challenge to the validity of his arrest and subsequent incarceration is not cognizable under § 1983 unless his state criminal proceedings have been favorably terminated. *Heck*, 512 U.S. at 486-87. *Heck* "bars claims for false arrest and false imprisonment." *Chapman v. Fais*, 540 F. Supp. 3d 304, 309 (E.D.N.Y. 2021) (holding that claims based on plaintiff's allegedly illegal arrest and prosecution were barred by *Heck*); *see also e.g., Jennings v. Decker*, 359 F. Supp. 3d 196, 210 (N.D.N.Y. 2019) ("Plaintiff cannot maintain a false arrest claim ... because such a claim would collaterally attack Plaintiff's conviction in violation of *Heck*"); *Corley v. Vance*, 365 F. Supp. 3d 407, 440 (S.D.N.Y. 2019) (holding that *Heck* barred false arrest and false imprisonment claims, "because relief would imply the invalidity of Plaintiff's conviction."), *aff'd sub. nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020).

 **\*5** Here, Plaintiff asserts that his arrest was unconstitutional because it occurred following an unlawful search of him and his vehicle, and judgment in his favor on this claim would imply the invalidity of any conviction resulting from his arrest. The Supreme Court has held that "[t]he proper approach in our federal system generally is for a criminal defendant who believes that the criminal proceedings against him rest on knowingly fabricated evidence to defend himself at trial and, if necessary, then to attack any resulting conviction through collateral review proceedings." *McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019). Consequently, this claim must be dismissed.

Disposition of a case based on *Heck* "warrants only dismissal *without* prejudice, because the suit may be reinstituted should plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.' " *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (quoting *Heck*, 512 U.S. at 487). Plaintiff is granted leave to amend his Complaint to demonstrate why his false arrest claim is not barred by *Heck*.


### C. Fourteenth Amendment Claims

Case 5:25-cv-01167-MAD-MJK   Document 8   Filed 10/15/25   Page 40 of 42

Myers v. Wigdorski, Not Reported in Fed. Supp. (2023)

The Complaint also states, without further explanation, that Defendants violated Plaintiff's Fourteenth Amendment "[d]ue process and equal protection[ ] rights." Docket Item 1 at 3. To the extent that Plaintiff asserts a substantive due process claim, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Conroy v. Caron*, 275 F. Supp. 3d 328, 352 (D. Conn. 2017) (internal quotation marks omitted) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)). Plaintiff does not allege any facts supporting a due process claim that do not apply to his Fourth Amendment claims. "Because the Fourth Amendment provides a more explicit textual source of constitutional protection for plaintiffs' claims of illegal search ... [the Court] need not address these claims under a substantive due process analysis. *Conroy v. Caron*, 275 F. Supp. 3d 328, 352 (D. Conn. 2017).

To the extent that Plaintiff asserts an equal protection claim, the Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Conroy*, 275 F. Supp. 3d at 352 (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)). To allege a sufficient equal protection claim, a plaintiff typically must allege that he or she "compared with others similarly, was selectively treated," and that "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)). Alternatively, a plaintiff may assert a "class of one" equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). To allege such a claim, a plaintiff "must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citing *Village of Willowbrook*, 528 U.S. at 564).

**\*6** Here, the Complaint includes only the conclusory allegation that Defendants violated his equal protection rights. Docket Item 1 at 3. Plaintiff does not allege selective treatment or that he was treated differently from others similarly situated, and this claim is subject to dismissal.

## III. OFFICIAL CAPACITY CLAIMS

### A. City of Buffalo Defendants

Plaintiff asserts claims against each Defendant in his or her official capacity. Plaintiff named the City of Buffalo ("Buffalo") as a Defendant, and Buffalo is the real party in interest for official capacity claims asserted against the Defendants employed by Buffalo. *See Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) ("[A] suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent."). However, a local government such as Buffalo may not be held liable under § 1983 unless the challenged action was performed pursuant to a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Municipalities are not subject to § 1983 liability solely on the doctrine of *respondeat superior. Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *Monell*, 436 U.S. at 694. To hold a municipality liable in a § 1983 action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks omitted); *see also Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) ("In order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.").

Plaintiff has not alleged that the unlawful search and arrest occurred pursuant to an official custom or policy. Accordingly, Plaintiff's official capacity claims against Defendants Buffalo, Wigdorski, Christopher, and Folckemer are dismissed, with leave to amend.

Plaintiff's claims against the City of Buffalo Police Department must be dismissed with prejudice because the Police Department is not an independent legal entity subject to suit. *See Dickson v. Schenectady Police Dep't*, No. 21-CV-0825 (LEK/DJS), 2022

WL 1091615, at *1 n.1 (N.D.N.Y. Apr. 12, 2022) (noting that a police department is not an independent entity subject to suit); *Fusco v. County of Nassau*, 492 F. Supp. 3d 71, 79 (E.D.N.Y. 2020) (noting that a police department is not a suable entity because it is an administrative arm of the county).

**B. New York State**

Plaintiff named New York State as a Defendant but did not make any specific allegations against the state. The Eleventh Amendment bars federal court claims against states, absent their consent to such suit or an express statutory waiver of immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Gaby v. Bd. of Trustees of Cmty. Tech. Coll.*, 348 F.3d 62, 63 (2d Cir. 2003). In interpreting the Eleventh Amendment, the Supreme Court has consistently held that "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees v. Garrett*, 531 U.S. 356, 363 (2001). Accordingly, all of Plaintiff's claims against New York State are dismissed without prejudice.

**IV. LEAVE TO AMEND**

**\*7** In general, district courts should give *pro se* litigants leave to amend their complaints before facing final dismissal. *Cuoco*, 222 F.3d at 112. The Court will, therefore, permit Plaintiff to file an amended complaint to show cause why his illegal search and false arrest claims are not barred by *Heck* and to allege facts, if in existence, to support his illegal search, false arrest, equal protection, and due process claims. *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) ("[S]parse pleadings by a *pro se* litigant unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action"); Fed. R. Civ. P. 15(a)(2) ("[C]ourt should freely give leave when justice so requires."). The amended complaint must allege how each named Defendant was "personally involved" in the specific constitutional violations for which Plaintiff seeks relief. *See, e.g., Dargan v. Heath*, No. 10 Civ. 7360 (PKC), 2011 WL 1795814, at *4 (S.D.N.Y. May 4, 2011).

## CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, his request to proceed *in forma pauperis* is granted. Docket Item 2.

Plaintiff's claims against the City of Buffalo Police Department are dismissed with prejudice. Plaintiff's claims against New York State are dismissed without prejudice and without leave to amend. Plaintiff's remaining claims will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) unless he files an amended complaint **no later than 45 days from the date of this Order** in which he (1) includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure and (2) shows cause why his illegal search and false arrest claims should not be dismissed pursuant to *Heck*, 512 U.S. at 486-87.

Plaintiff is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, the amended complaint must include all of the allegations against the Defendants so that it may stand alone as the sole complaint in this action which the Defendants must answer.

## ORDER

IT HEREBY IS ORDERED that Plaintiff's Motion to proceed *in forma pauperis*, Docket Item 2, is granted; and it is further

Myers v. Wigdorski, Not Reported in Fed. Supp. (2023)

Case 5:25-cv-01167-MAD-MJK    Document 8    Filed 10/15/25    Page 42 of 42

ORDERED that Plaintiff's claims against the Buffalo City Police Department and New York State are dismissed without leave to amend; and it is further

ORDERED that Plaintiff is granted leave to file an amended complaint as directed above by no later than **45 days from the date of this Order;** and it is further

ORDERED that the Clerk of Court is directed to send to Plaintiff this Order, a copy of the Complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that in the event Plaintiff fails to file an amended complaint as directed **within 45 days from the date of this Order,** the Complaint shall be dismissed without further order of the Court; and it is further

ORDERED that if Plaintiff has not filed an amended complaint by no later than **45 days from the date of this Order,** the Clerk of Court is directed to close this case as dismissed; and it is further

ORDERED that in the event the Complaint is dismissed because Plaintiff has failed to file an amended complaint, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Further requests to proceed *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**\*8** SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2023 WL 10147483

## Footnotes

1    The Court's review of Plaintiff's claims includes a Decision and Order attached to his Complaint as an exhibit. *See Cooper v. Dennison*, No. 08-CV-6238 CJS, 2011 WL 1118685, at *1 (W.D.N.Y. Mar. 24, 2011) ("The court will consider a number of documents that, while not part of the Amended Complaint, are arguably incorporated by reference, and were clearly integral to the complaint and relied upon by the Plaintiff." (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.")).

2    The Supreme Court noted in *Heck*, however, that "a suit for damages attributable to an allegedly unreasonable search ... would not *necessarily* imply" that the state court conviction was unlawful if the relevant evidence was otherwise admissible under doctrines such as harmless error. 512 U.S. at 487 n.7.

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.